IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE KRAUS,                    :      CIVIL ACTION
                                   :      No. 15-4180
          Plaintiff,               :
                                   :
     v.                            :
                                   :
PA FIT II, LLC, et al.,            :
                                   :
          Defendants.              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      January 11, 2016

## I.    INTRODUCTION

Plaintiff Michelle Kraus brought this action for unlawful retaliation, hostile work environment, and unpaid wages against her former employers, PA Fit II, LLC, Megan Sweitzer, William Maher, and Denise Maher, individually, and RetroFitness Clubs, LLC (collectively, "Defendants"), pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, et seq., the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. [hereinafter "FLSA"], and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, et seq. See Compl., ECF No. 1, Ex. A.

After a conference with Magistrate Judge Reuter, the parties reached a settlement agreement as to all of Plaintiff's claims for a gross payment of $18,000--a settlement agreement for which Plaintiff now seeks Court approval. Pl.'s Mot. to Approve a Settlement Agreement, ECF No. 18 [hereinafter "Pl.'s Mot."]. For the reasons that follow, the Court will grant in part and deny in part Plaintiff's uncontested motion for judicial approval of the settlement agreement.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2013, Defendants hired Plaintiff as a personal trainer at the "RetroFitness" Gym located in Holmes, Pennsylvania. Pl.'s Mot. ¶ 4. Defendants paid Plaintiff as a W-2 employee on an hourly basis at the rate of $9.00 per half-hour personal training session. Id. ¶ 5.

On or about April 30, 2014, Plaintiff sent an email to Defendant Sweitzer, the gym's operational manager, to report comments allegedly made by her male co-workers that she perceived as sexually inappropriate, thereby creating a sexually hostile work environment. Id. ¶ 8. Plaintiff also reported that Nicole Gussin, a female co-worker, had received sexually inappropriate text messages from a male co-worker, Darold Williams. Id. ¶ 9. In response to Plaintiff's email, Defendant Sweitzer obtained copies of the text messages between Ms. Gussin

and Mr. Williams. Id. ¶ 12. After reading the messages, Defendant Sweitzer concluded that Ms. Gussin, not Mr. Williams, had been the one to send sexually inappropriate text messages and photographs. Id. ¶ 13. Thereafter, Defendant Sweitzer decided that Plaintiff had falsely accused Mr. Williams of sexually harassing Ms. Gussin, and Defendant Sweitzer terminated Plaintiff's employment on May 7, 2014. Id. ¶ 14.

In August 2014, Plaintiff filed a timely charge of discrimination with the Pennsylvania Human Relations Commission ("PaHRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant Sweitzer unlawfully terminated her employment as retaliation for the email complaint. Id. ¶ 15. Plaintiff received a Dismissal Letter from the PaHRC and a Right-to-Sue Letter from the EEOC. Id. ¶ 16. Plaintiff then filed a timely Complaint against Defendants in the Court of Common Pleas of Delaware County, Pennsylvania, raising the following claims: unlawful retaliation under Title VII and the PaHRA; sexually-hostile work environment under Title VII and the PaHRA; and discriminatory and unpaid wages under Title VII, the PaHRA, the FLSA, and the Pennsylvania Minimum Wage Act.

Specifically, in her wage-related claims, Plaintiff alleged that Defendants assigned personal training clients to the male personal trainers at a higher / more frequent rate than the female personal trainers, which gave male personal trainers

higher wage earning potential. Compl. ¶¶ 133-140. Defendants subsequently removed the case to this Court on the basis of federal question jurisdiction. ECF No. 1.

Plaintiff also filed an unfair labor charge with the National Labor Relations Board ("NLRB") against Defendants PA Fit II, LLC, Sweitzer, and the Mahers. Pl.'s Mot. ¶ 18. Plaintiff claimed that her sexual harassment complaints constituted concerted, protected activity under the National Labor Relations Act [hereinafter "NLRA"] and thus her termination was unlawful. Id. On or about January 29, 2015, the NLRB Regional Office issued a Complaint against Defendants, id. ¶ 19, and on May 6, 2015, an evidentiary hearing was held before Administrative Law Judge Arthur Amchan. Id. ¶ 20.

ALJ Amchan dismissed the Regional Office's complaint on June 19, 2015. Id. ¶ 21. ALJ Amchan found that Plaintiff's email constituted protected, concerted activity under the NLRA, but he ultimately determined that Plaintiff made the accusations "with reckless disregard for the truth." Id. ¶ 22. He stated that there was "no credible evidence" to establish the unwanted nature of the text messages sent between Ms. Gussin and Mr. Williams. Id. Thereafter, the Regional Office filed Exceptions

to the ALJ's decision, which remain pending[1] before the NLRB. Id. ¶ 24.

In light of the NLRB and PaHRC proceedings, the parties agreed to participate in a settlement conference with Magistrate Judge Reuter before expiration of Defendants' deadline to respond to Plaintiff's Complaint. Id. ¶ 25. The settlement conference was held on August 31, 2015, during which the parties agreed to settle all of Plaintiff's claims. Id. ¶ 26.

In the proposed Settlement Agreement ("the Agreement"), Defendants PA Fit II, LLC, Sweitzer, and the Mahers agree to pay a sum of $18,000 to Plaintiff in consideration for a general release, dismissal of the federal court action, and voluntary withdrawal of the NLRB proceeding. Id. ¶ 27. The $18,000 is to be apportioned as follows: $10,934.27 payable to Plaintiff on a W-2 basis representing all lost wages, and $7,065.73 payable to Plaintiff's counsel on a 1099 basis representing attorneys' fees and litigation costs. Id. The parties also agree that Defendants will pay regular installments to Plaintiff and her counsel, and the total amount is payable in full within five (5) months from the effective date of the Agreement. Id. 6 n.7.

---

[1] Plaintiff indicated the Exceptions were pending as of October 23, 2015, the date of the Motion.

On September 1, 2015, this Court ordered that Plaintiff's case be dismissed with prejudice pursuant to Rule 41.1(b) of the Local Rules of Civil Procedure. ECF No. 16. The Order stated that the Court would retain jurisdiction for 90 days to hear motions to vacate, modify, or strike from record, for cause shown, entry of the order of dismissal. Id.

On September 24, 2014, counsel for Defendant Denise Maher notified the Court by letter that,

> [b]ecause a portion of the settlement payments related to claims of unpaid wages that arise under the Fair Labor Standards Act, it is necessary for there to be a supervised release. Accordingly, I request on behalf of all of the parties that you execute the Order approving the settlement terms as to comply with the provisions of the Fair Labor Standards Act requiring a supervised release.

On October 5, 2015, the Court denied the approval sought in the letter and granted leave to the parties to file a motion seeking approval of the Agreement with a supporting memorandum of law that would assist the Court in conducting the requisite fairness inquiry. ECF No. 17. Because the initial 90-day period during which the Court retained jurisdiction was set to lapse on November 30, 2015, the Court extended this period for an additional 90 days. ECF No. 20.

Following the Court's order, Plaintiff filed an "Uncontested Motion to Approve a Settlement Agreement." ECF No. 18. Therein, Plaintiff first argues that judicial scrutiny is not required to effectuate a private FLSA settlement agreement. Pl.'s Mot. 1, 2 n.1, 6 n.8. Alternatively, and assuming that judicial approval is required in this case, Plaintiff analyzes the Agreement under the standard consistently used by courts in this Circuit--that is, the fair and reasonableness standard adopted from Lynn's Food Stores Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).

### III. TERMS OF THE SETTLEMENT

The parties' proposed Agreement contains a general release and waiver of all claims. ECF No. 18, Ex. C ¶ 4. Plaintiff agrees to release and discharge all Defendants of and from any claims, actions, causes of action, back pay, front pay, contracts, agreements, etc., in law or equity, contract or tort or otherwise, through the effective date of the Agreement. Id. at 4. The release does not apply to claims based on facts occurring after the date of the Agreement. Id. at 5.

Plaintiff agrees not to refile, revive, or reopen this case or any related suit, except as it relates to judicial approval of this Agreement, enforcement of its terms and conditions, or the entries of formal judgment against

7

Defendants, pursuant to sub-paragraph 8(c) of the Agreement. <u>Id.</u> ¶ 5.

Within seven (7) days of the Agreement's effective date, Plaintiff agrees to formally request in writing that Regional Counsel for the NLRB dismiss her now-pending case with prejudice. <u>Id.</u> ¶ 6. Plaintiff further agrees that if the NLRB declines to dismiss the charge with prejudice, Plaintiff will disclaim all rights to the benefits and payments described within the Agreement. <u>Id.</u>

Plaintiff further agrees that she will not bring any other lawsuit, legal proceeding, action, or claim of any nature with any agency or court against Defendants, based on any matter, fact, or event occurring prior to the effective date of the Agreement, whether now known or unknown. <u>Id.</u> ¶ 7. She avers that she understands she will not be considered a prevailing party. <u>Id.</u> at 7. In exchange, Defendants agree to pay a total of $18,000.00 to Plaintiff. <u>Id.</u> ¶ 8. The schedule and terms of payment are detailed in the Agreement.

The Agreement also includes provisions addressing rehire, <u>id.</u> ¶ 10, non-disparagement, <u>id.</u> at ¶ 11, and repayment in the event of breach, <u>id.</u> ¶ 12. There are to be no attorneys' fees paid besides those addressed in the Agreement. <u>Id.</u> ¶ 13. The Agreement includes, among others, clauses addressing choice of law and forum, stating that Plaintiff signs the Agreement

8

with full knowledge of any and all rights she may have, explaining that Agreement is severable in the event any provision is found invalid, and averring that the Defendants may use the Agreement as a complete bar to any action or suit before any court or administrative body with respect to the claims released therein. Id. ¶¶ 14-18. The proposed Agreement is signed by Michelle Kraus, PA Fit, LLC, Meghan Sweitzer, William Maher, and Denise Maher.[2] Id. at 14-15.

## IV.   MOTION TO APPROVE THE SETTLEMENT AGREEMENT

Plaintiff argues that the FLSA "permits private settlements of claims, so long as they resolve bona fide disputes over the amount of hours worked or wages owed, and do not result in employers paying employees less than the statutory-minimum hourly wage or overtime rates." Pl.'s Mot. 1. According to Plaintiff, every court within this Circuit that has applied the Lynn's Food fairness and reasonableness standard to assess the propriety of an FLSA settlement disregarded the correct FLSA directive. Id. Plaintiff instead suggests that under 29 U.S.C. § 253(a), the Court should approve the parties' proposed settlement without looking at its terms, because it

---

[2]      According to Plaintiff, the Settlement Agreement is entered into by PA Fit II, LLC, RetroFitness Clubs, LLC, RetroFitness USA, LLC, Sweitzer, William Maher, and Denise Maher. Pl.'s Mot. Ex. C, at 1.

resolves a bona fide dispute not intended to pay Plaintiff back wages in an amount less than the FLSA's statutory minimum rates. Alternatively, Plaintiff contends that if judicial scrutiny is proper, then the Agreement here resolves a bona fide dispute between the parties and its terms are fair and reasonable. The Court will address each argument in turn.

A.   Legal Standard

There are only two ways that FLSA claims may be compromised or settled: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c), or (2) a compromise approved by the district court pursuant to 29 U.S.C. § 216(b). Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014) (explaining that Department of Labor supervision or court approval are the "only two ways that FLSA claims can be settled or compromised by employees," "[b]ecause of the public interest in FLSA rights").

The second avenue--approval by the district court--is at issue in this case. Because the Third Circuit has not provided any specific guidance on this issue, district courts within this Circuit have looked to the Eleventh Circuit's opinion in Lynn's Food for guidance. Under Lynn's Food, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines

10

that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" <u>Cuttic v. Crozer-Chester Med. Ctr.</u>, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting <u>Lynn's Food</u>, 679 F.2d at 1354); <u>see also</u> <u>Lyon's v. Gerhard's Inc.</u>, No. 14-06693, 2015 WL 4378514, *3 (E.D. Pa. July 16, 2015) (applying the <u>Lynn's Food</u> standard).

A proposed settlement resolves a bona fide dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." <u>Lynn's Food</u>, 679 F.2d at 1355. Having first determined that the settlement concerns a bona fide dispute, courts will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s),[3] and (2) the agreement

---

[3]    Courts in this Circuit routinely apply the nine-factor test from <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975) to assess whether a proposed settlement agreement is fair and reasonable. <u>See, e.g.,</u> <u>Lyons</u>, 2015 WL 4378514, at *4. Originating in the class action context, the <u>Girsh</u> factors are as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the

> defendants to withstand a greater judgment;
> (8) the range of reasonableness of the
> settlement fund in light of the best
> possible recovery; and (9) the range of
> reasonableness of the settlement fund to a
> possible recovery in light of all the
> attendant risks of litigation.

Girsh, 521 F.2d at 157 (citation omitted).

Without guidance from the Third Circuit, district courts have used the Girsh factors to assess whether private FLSA settlements are fair and reasonable. See, e.g., Lyons, 2015 WL 4378514, at *3 n.1, 4; Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at *7 (M.D. Pa. Jan. 22, 2015). In doing so, courts are forced to ignore the factors specific to the class-action context, and the resulting analysis is not a Girsh analysis at all.

Although a "fair and reasonableness" standard may bring Girsh to mind as a well-established tool in assessing proposed settlement agreements, the application of Girsh to private FLSA settlements misses the mark. The Girsh factors grow out of two primary concerns: (1) class members may not be adequately represented or (2) class interests may not be adequately protected. See Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3d Cir. 2011) (explaining that "'trial judges bear the important responsibility of protecting absent class members,' and must be 'assur[ed] that the settlement represents adequate compensation for the release of the class claims'" (quoting In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 349 (3d Cir. 2010)). Indeed, Federal Rule of Civil Procedure 23 specifically requires that "a class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 316 (3d Cir. 1998).

In light of these policy concerns, Courts have logically extended the application of Girsh to assess FLSA collective action settlements. See, e.g., Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *4-5 (D.N.J. Mar. 26, 2012) ("While factors for evaluating 'fairness' of a settlement in an FLSA collective action have not

furthers the FLSA's implementation in the workplace. See <u>Mabry</u> <u>v. Hildebrant</u>, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015); <u>McGee v. Ann's Choice, Inc.</u>, No. 12-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014).

---

been definitively set out by the Third Circuit, district courts in this Circuit have utilized the <u>Girsh</u> factors established for approving Rule 23 class action settlements.").

However, these same concerns are not implicated by a private FLSA settlement. First, the concern of adequate representation is not as pressing where an attorney negotiates a settlement on behalf of a single client. Second, in the private settlement context, the court need not act as "a fiduciary who must serve as a guardian of the rights of absent class members." <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.</u> <u>Litig.</u>, 55 F.3d 768, 785 (3d Cir. 2004) (quoting <u>Grunin v. Int'l</u> <u>House of Pancakes</u>, 513 F.2d 114, 123 (8th Cir. 1975)).

Indeed, at least one district court in this Circuit has assessed whether a private FLSA claim settlement is fair and reasonable without specifically using the <u>Girsh</u> factors. <u>See,</u> <u>e.g.</u>, <u>Mabry</u>, 2015 WL 5025810, at *2. Moreover, district courts outside of this Circuit have used different standards to evaluate the fairness and reasonableness of a proposed settlement. <u>See, e.g.</u>, <u>Sarceno v. Choi</u>, 66 F. Supp. 3d 157, 172 (D.D.C. 2014) ("The totality of circumstances approach examines three primary aspects of the agreements to evaluate their fairness and reasonableness: (1) whether the employer is 'overreaching' to secure a waiver of rights; (2) whether the settlement was reached by arms' length negotiation; and (3) whether the plaintiffs would have difficulty obtaining a judgment.").

Even though <u>Girsh</u> may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying <u>Girsh</u> simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable.

13

The issue presented here, however, is whether this
same standard should be applied to assess the propriety of a
private[4] FLSA settlement. This Court agrees with other district
courts in this Circuit, which have consistently answered this
question in the affirmative. Mabry, 2015 WL 5025810, at *1-2
(collecting cases); Bettger v. Crossmark, Inc., No. 13-2030,
2015 WL 279754, at *3-4 (M.D. Pa. Jan. 22, 2015) (collecting
cases).

> 1.   The FLSA's structure and Congressional intent
>      require judicial scrutiny of a private FLSA
>      settlement agreement for fairness and
>      reasonableness

Requiring judicial scrutiny of a proposed FLSA
settlement, whether a collective action or private, is
consistent with the FLSA's statutory structure and best meets
its policy goals.

First, judicial approval comports with the FLSA's
structure, which reflects Congress's reluctance to altogether
forgo some form of supervision or review of FLSA claim
settlements. Aside from § 253, discussed infra, § 216(c) is the
only avenue for non-judicial approval of settlements and
authorizes the Department of Labor to supervise settlements of

---

[4]       The term "private" settlement refers to a settlement
of a single plaintiff's claim or a claim belonging to a select
few, as opposed to a class or collective action.

claims for unpaid minimum wages and overtime compensation. See S. Rep. No. 81-640, 1940 U.S.C.C.A.N. 2241 (1949). Section 216(c) was enacted to incentivize employers to accept settlements subject to supervision by the Department of Labor Wage and Hour Division.[5] "Agreements made pursuant to

_____

[5]        The Senate report for the 1949 amendments reads in part:

> The Wage and Hour Division has pointed out that there are a variety of causes for the decline of voluntary restitution. Undoubtedly one of the most important of these is the fact that an employer who pays back wages which he withheld in violation of the act has no assurance that he will not be sued for an equivalent amount plus attorney's fees under the provisions of section 16(b) of the act. One of the principal effects of the committee proposal will be to assure employers who pay back wages in full under the supervision of the Wage and Hour Division that they need not worry about the possibility of suits for liquidated damages and attorney's fees. . . . The committee agrees with the report of the House Committee on Education and Labor which, in discussing this matter, points out that this provision--* * * is essential to the equitable enforcement of the provisions of the act and that it should be welcomed by fair-minded employers who wish to make restitution for perhaps unwitting violations of the act by encouraging them to do so in such a manner to insure that their liability will be limited to the amount of wages due.

S. Rep. No. 81-640 (1949), reprinted in 1949 U.S.C.C.A.N. 2241, 2249.

§ 216(c) . . . do not need judicial scrutiny because the
fairness of their terms is assured by the watchful eye of the
Department of Labor." Lynn's Food Stores, Inc. v. United States,
No. 180-219, 1981 WL 2330, at *3 (S.D. Ga. July 17, 1981). As
such, § 216(c) "creates the possibility of a settlement,
supervised by the Secretary to prevent subversion, yet effective
to keep out of court disputes that can be compromised honestly."
Walton v. United Consumers Club, Inc., 786 F.2d 305, 306 (7th
Cir. 1986).

        Here, the parties have not subjected their proposed
settlement to DOL oversight pursuant to § 216(c). Therefore, the
only remaining avenue under the statute for a valid waiver of
Plaintiff's FLSA rights is judicial approval pursuant to 29
U.S.C. § 216(b).

        Second, subjecting a private FLSA settlement agreement
to judicial scrutiny furthers the FLSA's express policy goal "to
correct and as rapidly as practicable . . . eliminate" certain
"labor conditions detrimental to the maintenance of the minimum
standard of living necessary for the health, efficiency, and
general well-being of workers." 29 U.S.C. § 202.

        Settlement of disputes between private parties is
generally permitted without court involvement. Digital Equip.
Corp. v. Desktop Direct, Inc., 511 U.S. 863, 881 (1994)
(addressing the longstanding "public policy favoring voluntary

16

resolution of disputes"); <u>Williams v. First Nat. Bank</u>, 216 U.S. 582, 595 (1910) (discussing the presumption that disputes can be resolved by settlement). But the Supreme Court has recognized Congress's reluctance to permit unsupervised settlement of FLSA actions.

First, in <u>Brooklyn Savings Bank v. O'Neil</u>, the Supreme Court held that a plaintiff cannot waive his right to liquidated damages in an FLSA case. 324 U.S. 697, 709-10 (1945). The Court explained that a statutory right "conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." <u>Id.</u> at 704. As such, a waiver of rights under the FLSA is void where only back pay is paid without liquidated damages. <u>Id.</u> at 710.

Then, in <u>D.A. Schulte v. Gangi</u>, the Court held that a dispute over whether an employer is covered by the FLSA cannot serve as the basis for an employee's waiver of FLSA rights. 328 U.S. 108, 114 (1946). The Court explained that "the purpose of the Act, which we repeat from the O'Neil case[,] was to secure for the lowest paid segment of the nation's workers a subsistence wage." <u>Id.</u> at 116. This purpose "leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." <u>Id.</u> According to the Court, "such a compromise thwarts the public policy of minimum wages." <u>Id.</u>

The Supreme Court decisions in Brooklyn Savings and
Gangi indicate FLSA settlements are a breed unto their own. See
Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206-207
(2d Cir. 2015) (explaining that "judicial approval in the FLSA
setting is necessary" where "the FLSA is a uniquely protective
statute"). As the Seventh Circuit explained:

> Ordinarily there would be no need for a
> statute allowing settlement of a dispute
> between employer and employees--people may
> resolve their own affairs, and an accord and
> satisfaction bars a later suit. Yet the Fair
> Labor Standards Act is designed to prevent
> consenting adults from transacting about
> minimum wages and overtime pay. Once the Act
> makes it impossible to agree on the amount
> of pay, it is necessary to ban private
> settlements of disputes about pay. Otherwise
> the parties' ability to settle disputes
> would allow them to establish sub-minimum
> wages.

Walton, 786 F.2d at 303.

In other words, to approve a settlement merely because
the parties agreed, regardless of its terms, thwarts Congress's
goals in enacting this type of protective legislation and
deprecates the employee's rights provided for under the statute.
This standard holds true whether the rights at issue belong to
one employee or 100 employees. See Barrentine v. Arkansas-Best
Freight Sys., Inc., 450 U.S. 728, 739 (1981) (explaining that
"the FLSA was designed to give specific minimum protections to
individual workers and to ensure that each employee covered by

18

the Act would receive" its protections (emphasis in original)).
Declining to assess a proposed FLSA settlement "leaves the
parties in an uncertain position" as to their statutorily
protected rights. Carillo v. Dandan Inc., 51 F. Supp. 3d 124,
131 (D.D.C. 2014). Therefore, judicial scrutiny of a private
FLSA settlement agreement to ensure it is fair and reasonable to
the employee is essential to accomplishing the FLSA's purpose.

### 2.   Section 253(a) does not apply to this case

According to Plaintiff, "the Courts of this District
that previously applied the fairness and reasonableness standard
of Lynn's Food . . . departed from the directive of § 253(a) by
engrafting additional considerations for approval of private
FLSA settlements." Pl.'s Mot. at 1. In other words, Plaintiff
argues that the Lynn's Food standard runs counter to the FLSA.
But Plaintiff misreads the plain language of the statute and
ignores its legislative history.

In 1947, Congress enacted the Portal-to-Portal Act to
reduce claims brought by employees for time spent performing
minor, possibly non-essential work activities, such as walking
to and from the work station after punching the time clock
(i.e., walking from portal to portal). See 29 U.S.C. § 254(a).
Congress included § 253(a), which permits compromises and

releases for actions accruing prior to the Portal-to-Portal

Act's passage. Section 253(a) specifically reads as follows:

> Any cause of action under the Fair Labor
> Standards Act of 1938, as amended [29
> U.S.C.A. § 201 et seq.], the Walsh-Healey
> Act, or the Bacon-Davis Act, which accrued
> prior to May 14, 1947, or any action
> (whether instituted prior to or on or after
> May 14, 1947) to enforce such a cause of
> action, may hereafter be compromised in
> whole or in part, if there exists a bona
> fide dispute as to the amount payable by the
> employer to his employee; except that no
> such action or cause of action may be so
> compromised to the extent that such
> compromise is based on an hourly wage rate
> less than the minimum required under such
> Act, or on a payment for overtime at a rate
> less than one and one-half times such
> minimum hourly wage rate.

29 U.S.C. § 253(a).

By its very language, § 253(a) does not apply to

actions which accrued after May 14, 1947. Indeed, subsection (a)

is entitled "Compromise of certain <u>existing</u> claims under the

Fair Labor Standards Act of 1938, the Walsh-Healey Act, or the

Bacon-Davis Act; limitations." <u>Id.</u> (emphasis added).[6]

Furthermore, the House Report reads as follows:

> It will be noted that [section 3] of the
> conference agreement lays down no rule as to
> compromises or waivers with respect to

---

[6]     The provision's specific reference to preexisting
claims also shows that if Congress had intended to allow the
private settlement of wage claims accruing after the effective
date of the Act, it could have expressly done so.

causes of action hereafter accruing. The
validity or invalidity of such compromises
or waivers is to be determined under law
other than this section.

H.R. Rep. No. 80-4386 (1947) (Conf. Rep.).[7]

The Lynn's Food plaintiffs attempted the same argument

as Plaintiff does here--namely, that § 253 should determine the

enforceability of a private FLSA settlement. 679 F.2d at 1353

n.7. However, as the Eleventh Circuit explained, "[b]y its terms

. . . section 253 applies only to actions which 'accrued prior

to May 14, 1947,' the date the statute was enacted." Id. Here,

---

[7]     Regulations promulgated to implement the 1947
amendments also shed light on the limitations of this provision.
For example, 29 C.F.R. § 790.27 noted that the Portal-to-Portal
Act "authorize[s] compromise only of those causes of action
accruing prior to May 14, 1947, and of actions thereon; the
statute does not change existing law as to compromise of such
claims, with respect to any cause of action accruing after the
date of enactment of the act." Id.; see also The Fair Labor
Standards Act, § 1.IV.A.2. at 12 (Ellen C. Kearns, et al., eds.
1999) (explaining that the Portal Act amendment codified at 29
U.S.C. § 253 is "retroactive" only); Marc Linder, Class Struggle
at the Door: The Origins of the Portal-to-Portal Act of 1947, 39
Buff. L. Rev. 53, 137, 148 (1991) (explaining that the initial
House bill would have allowed all claims to be "waived,
compromised, adjusted, settled, or released[,]" but the Senate
version of the bill that was ultimately adopted by the
conference committee did not extend compromise and settlement to
future actions).

        Indeed, during the passage of the bill, Senator
Donnell explained that "we have recognized in our bill, by not
making the provision for compromise and settlement applicable to
the future, that there is a grave danger of placing a provision
for that kind in the bill as to future activities, because such
a provision might well result, as in the case of Brooklyn
National Savings Bank, in the utter demolition of the Fair Labor
Practices Act." 93 Cong. Rec. 2121 (1947).

no party to the present case contends the cause of action accrued before 1947. Therefore, § 253(a) does not apply.

The Fifth Circuit's decision in Martin v. Spring Break '83 Products, LLC, 688 F.3d 247 (5th Cir. 2012), does not change this result. According to Plaintiff, Martin stands for the proposition that all private FLSA settlement agreements are binding and enforceable without prior court approval pursuant to § 253(a),[8] so long as they resolve a bona fide dispute and do not compromise employees' substantive FLSA rights. Pl.'s Mot. 2. Plaintiff is incorrect.

In Martin, the Fifth Circuit articulated what it has deemed an "except[ion], from th[e] general rule" that "in the absence of supervision by the Department of Labor or scrutiny from a court, a settlement of an FLSA claim is prohibited." Bodle v. TXL Mortg. Corp., 788 F.3d 159, 164-65 (5th Cir. 2015) (explaining that Martin set forth an exception to the general Lynn's Food rule). The court stated that the Eleventh Circuit in Lynn's Food was concerned with the "danger of employees being disadvantaged by unequal bargaining power." Martin, 688 F.3d at 256 n.10. Because the employees in Martin, unlike the employees

---

[8]       The Martin court cited § 253(a) only once in its opinion and it did not analyze the provision at all. Therefore, it cannot be said, as Plaintiff would like, that the Martin court held that § 253(a) is the proper standard for determining the enforceability of a private FLSA settlement.

22

in Lynn's Food,[9] were represented by counsel in a lawsuit, the
court explained that "the concerns that the Eleventh Circuit
expressed in Lynn's Food Stores are not implicated." Id.
Therefore, the court reasoned that "such an exception would not
undermine the purpose of the FLSA because the plaintiffs did not
waive their claims through some sort of bargain but instead
received compensation for the disputed hours." Bodle, 788 F.3d
at 165.

     Contrary to Plaintiff's argument, the Fifth Circuit
did not lay down a categorical rule that court approval of
private settlements is never required, nor did it indicate that
it would approve a private settlement in circumstances other
than those present in Martin.[10] In fact, consistent with Lynn's
Food, the Martin court, in essence, scrutinized the terms of the

---

[9]       In Lynn's Food, after a Department of Labor
investigation, "the employees seemed unaware that the Department
of Labor had determined that Lynn's owed them back wages under
the FLSA, or that they had any rights at all under the statute.
There is no evidence that any of the employees consulted an
attorney before singing the agreements. Some of the employees
who signed the agreement could not speak English." 679 F.2d at
1353-54. The case thus addressed a situation where there was an
"'agreement' between an employer and employees outside of the
adversarial context of a lawsuit." Id. at 1354.

[10]      While the Plaintiff in this case would presumably
point out that she was represented by counsel, "the need
for such employee protections, even where the employees are
represented by counsel, remains." Cheeks, 796 F.3d at 207.

agreement at issue to ensure that they were fair and did not undermine the goals of the FLSA. <u>Martin</u>, 688 F.3d at 256 n.10.

The primary difference between the <u>Lynn's Food</u> and <u>Martin</u> standards is the timing of the judicial scrutiny. The Fifth Circuit scrutinized the agreement in <u>Martin</u> at some point after the parties entered it once a question arose over the settlement's enforceability.[11] Thus, <u>Martin</u> stands for retrospective scrutiny to determine the agreement's enforceability ex post. <u>Id.</u> at 225 (explaining that "the payment offered to and accepted by Appellants, pursuant to the Settlement Agreement, is an enforceable resolution of those FLSA claims predicated on a bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves").

In contrast, the <u>Lynn's Food</u> standard is applied prospectively to approve the agreement ex ante. <u>Lynn's Food</u>, 679 F.2d at 1353 ("When employees bring a private action for back

---

[11]     In <u>Martin</u>, individual employees had filed a lawsuit in state court before a settlement agreement was signed by union representatives on their behalf. <u>Martin</u>, 688 F.3d at 249-50. The individual employees received payments pursuant to the settlement agreement, but argued that the agreement did not prohibit them from pursuing their individual legal action. <u>Id.</u> at 253-54. Thus, the specific enforceability question in <u>Martin</u> was whether a settlement agreement entered into by union representatives on behalf of all union members was "binding upon the [Appellants] in their individual capacities and prohibits those individuals from pursuing future legal action" against their employers. <u>Id.</u> at 253-54.

24

wages under the FLSA, and present to the district court a
proposed settlement, the district court may enter a stipulated
judgment after scrutinizing the settlement for fairness.").

Although the Third Circuit has not expressly weighed
in, this Court rejects the Martin standard in favor of Lynn's
Food, joining the other district courts in this Circuit that
have held that ex ante judicial scrutiny of a private FLSA
settlement is required. See Mabry, 2015 WL 5025810, at *1
(collecting cases); Bettger, 2015 WL 279754, at *3 (collecting
cases). By doing so, the Court also follows the majority of
circuit courts holding that FLSA claims may not be settled
without approval of either the Secretary of Labor or a district
court. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199,
206-207 (2d Cir. 2015) ("Rule 41(a)(1)(A)(ii) stipulated
dismissals settling FLSA claims with prejudice require the
approval of the district court or the DOL to take effect.");
Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir.
2007) ("[U]nder the FLSA, a labor standards law, there is a
judicial prohibition against the unsupervised waiver or
settlement of claims.") superseded by regulation on other
grounds, Whiting v. Johns Hopkins Hosp., 416 F. App'x 312 (4th
Cir. 2011); Walton v. United Consumers Club, Inc., 786 F.2d 303,
306 (7th Cir. 1986) (explaining that "[c]ourts therefore have
refused to enforce wholly private [FLSA] settlements." (citing

Lynn's Food, 679 F.2d at 1352)); Copeland v. ABB, Inc., 521 F.3d 1010, 1014 (8th Cir. 2008) (explaining that supervision by the Secretary of Labor or a stipulated judgment by the district court are the "only two statutory exceptions to [the] general rule," "that FLSA rights are statutory and cannot be waived"); Lynn's Food, 679 F.2d at 1352; Seminiano v. Xyris Enter., Inc., 602 F. App'x 682, 683 (9th Cir. 2015) ("FLSA claims may not be settled without approval of either the Secretary of Labor or a district court.").

The Martin standard undermines finality by leaving the parties in an uncertain position until a dispute over its enforceability arises.[12] Under the Martin standard, "'until some court determines that there was a bona fide dispute as to how

---

[12] Applying the Martin standard also implicates jurisdictional issues, because unless a court expressly preserves jurisdiction beyond dismissal, the court's power to revisit the dismissed case would be terminated. Even if the court retained jurisdiction as a term of the settlement agreement, it would involve the court in the management of the case for only as long as the agreement remained inchoate. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) (explaining that a federal court cannot enforce agreements that settle claims without an independent basis for federal subject matter jurisdiction unless the dismissal order contains a separate provision "retaining jurisdiction" over the agreement or the court embodies the settlement in the dismissal order at the request of the parties).

Additionally, at least one Circuit Court has pointed out that the parties' dismissal of an FLSA case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) may not be appropriate without the court first approving the proposed settlement agreement. Cheeks, 796 F.3d at 206-207.

much plaintiff was owed in wages, and that the offer of judgment fairly compromises it, the employer has not eliminated its risk' of future litigation exposure, and could ultimately find its 'settlement' to be ephemeral." Sarceno v. Choi, 78 F. Supp. 3d 446, 450 (D.D.C. 2015) (quoting Picerni v. Bilinguial Seit & Presch., Inc., 925 F. Supp. 2d 368, 372 (E.D.N.Y. 2013)). The Martin standard does not increase judicial efficiency, because it requires the district court to conduct at least a preliminary assessment of the agreement in order to approve the stipulation of dismissal and then, if a dispute arose, to undertake a more extensive review of the settlement's terms.

Moreover, waiting until a dispute arises to assess the terms of an FLSA settlement would abdicate the Court's responsibility to ensure that the employee's rights are not unfairly compromised.

3.   The parties cannot circumvent judicial scrutiny by couching a waiver of FLSA rights within a waiver of non-FLSA rights

Plaintiff also contends that the private settlement of her FLSA claims should not be subject to judicial scrutiny where "the parties have agreed to a global settlement of . . . FLSA and non-FLSA claims." Pl.'s Mem. 7. Plaintiff suggests that judicial review of her "global settlement agreement" would risk "judicial disapproval or dismemberment on the basis of a test

applicable only to FLSA claims." Id. at 9-10. The Court is not persuaded by this argument.

If so-called "global settlements" were not subject to judicial review simply because the employee agreed to waive both FLSA and non-FLSA rights, employers could evade the FLSA's protections by simple contractual draftsmanship. Congressional intent would be all but abrogated by couching an FLSA waiver within a larger settlement agreement.

Even if a "global settlement" required courts to isolate the provisions relating to only FLSA rights, courts should not retreat from a statutory mandate merely because it is burdensome to enforce it. Further, the concern is not the "chilling effect on future litigants' ability or desire to freely negotiate and settle both FLSA and non-FLSA claims in global fashion" as Plaintiff suggests. Pl.'s Mem. 10. Rather, the concern embodied in the statutory scheme and the legislative history is the protection afforded to employees. See Lyon's, 2015 WL 4378514, at *3 ("Courts play an important role in ensuring that plaintiffs in FLSA lawsuits do not effectively waive their statutory rights."). Therefore, the waiver of FLSA rights, regardless of the form in which the waiver is crafted, must be scrutinized by the court to ensure the terms of the FLSA waiver are both fair and reasonable.

B.   <u>Analysis</u>

With this framework in mind, the Court proceeds to analyze the propriety of the private FLSA settlement agreement at issue in the present case.

1.   <u>Bona fide dispute</u>

The Court must first address the threshold question whether the proposed Agreement resolves a bona fide dispute. A dispute is "bona fide" where it involves "factual issues rather than legal issues such as the statute's coverage and applicability." <u>Creed v. Benco Dental Supply Co.</u>, No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (internal quotation marks omitted). A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute" and not a "mere waiver of statutory rights brought about by an employer's overreaching." <u>Lynn's Food</u>, 679 F.2d at 1355. "[T]o approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." <u>Id.</u> at 1354. In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the

defendant's intent to reject or actual rejection of that claim when it is presented.

Here, the existence of a bona fide dispute is not obvious. For her FLSA claim, Plaintiff alleges that she regularly worked in excess of 40 hours per week at the gym, performing tasks and assignments for which she received no compensation. Pl.'s Mot. Ex. A, at ¶¶ 139-42. She also alleges that the Defendants did not pay her for the time spent assessing potential clients, who ultimately chose not to purchase a personal training package. Id. ¶¶ 133-138. Defendants have not filed answers specifically denying these allegations. See Pl.'s Mot. 9 n.10. Nor have they defended against the FLSA claims by way of motion practice.

As a result, in order to establish that there is a bona fide dispute, Plaintiff relies on testimony from the NLRB hearing, during which Defendants stated that Plaintiff was the "highest paid [t]rainer" at the gym. Id. at 9. According to Plaintiff, these statements "strongly suggest[] that had the parties not entered into a voluntary settlement, Defendants would have denied and defended those claims consistently with their prior representations that Plaintiff was the highest paid personal trainer at the gym." Id.

But it is not clear whether the NLRB hearing testimony evidences a genuine dispute over Plaintiff's FLSA wage

30

allegations. Plaintiff filed an unfair labor charge against Defendant with the NLRB, alleging that her complaints of sexual harassment constituted concerted, protected activity for which Defendants could not terminate her. Id. ¶ 18. In contrast, Plaintiff's FLSA claims for unpaid wages are based on two contentions: (1) she regularly worked in excess of 40 hours per week without overtime compensation, and (2) she performed one-half hour training assessments for potential clients without compensation. Id. ¶ 35. As such, Plaintiff's allegations of unlawful termination under the NLRA are not the same as Plaintiff's allegations of unpaid wages under the FLSA. As Plaintiff herself admits, this "evidence does not specifically address Plaintiff's claims of working hours at the gym for which she received no compensation." Id. Just because Defendants believed Plaintiff to be a highly paid worker in general does not mean they dispute her contention that unpaid compensation was owed, and denying an NLRB claim is not the same as denying an FLSA claim as a matter of law.

On the other hand, Defendants' denial of the allegations in Plaintiff's complaint filed with the PaHRC provides some evidence that Defendants would likewise deny the factual allegations of Plaintiff's FLSA wage allegations, because both claims address Plaintiff's wages while working for Defendants. Plaintiff's PaHRC complaint alleged discriminatory

wages, which Defendants Pa Fit II, LLC, Sweitzer, and the Mahers denied. Id. ¶ 39. Defendants contended that they paid every other personal trainer at the gym $8.00 per one-half hour training session and that Plaintiff was compensated at a rate of $9.00 per one-half hour personal training session. Id. Ex. E ¶ 7(d). Therefore, Defendants' denial of Plaintiff's discriminatory wage claims provides some assurance that Defendants would also deny Plaintiff's unpaid wage claims.

Moreover, the proposed Agreement itself states that "Defendants believe they acted lawfully and properly at all times and in all respects and specifically deny any and all liability for the claims alleged by Kraus, but desire to avoid further legal fees and expenses that necessarily will result from prolonged litigation." Ex. C at 1, ¶ C. Although "[t]he recital in the release of the existence of a 'bona fide dispute' is . . . merely the declaration of a legal conclusion," Stilwell v. Hertz Drivurself Stations, 174 F.2d 714, 717 (3d Cir. 1949), the terms of the Agreement coupled with Defendants' denial of Plaintiff's PaHRC allegations is sufficient evidence of a bona fide dispute to assure the Court that the Agreement does not present a "mere waiver of statutory rights brought about by an employer's overreaching." Lynn's Food, 679 F.2d at 1355.

2.   Furtherance of the FLSA's implementation and
     whether the proposed Agreement is fair and
     reasonable

Because the Court is satisfied that there is
sufficient evidence of a bona fide dispute, the Court must next
determine whether the settlement is fair and reasonable. Mabry,
2015 WL 5025810, at *3.

Here, the proposed Agreement provides due compensation
for the alleged unpaid wages owed to Plaintiff. The Court finds
the compensation terms fair and reasonable because the
settlement amount is significant in light of Plaintiff's claim.
According to Plaintiff's calculations, "her FLSA claim for
unpaid wages amounts to approximately $1,944 to $3,888"
considering the estimated time that she worked without
compensation. Pl.'s Mot. 11. Given that the gross settlement
amount is $18,000, Plaintiff states that "even a random
allocation of one-half of the total gross settlement (i.e.,
$9,000) to Plaintiff's FLSA claim would result in more than
double the most conservative estimate of Plaintiff's unpaid wage
damages." Id. at 11-12. Therefore, the compensation afforded by
the proposed Agreement is fair.

Resolution of the claims would be expensive and
difficult where Plaintiff's case as a whole indicates
significant hurdles in establishing Defendants' liability. For
example, where the ALJ ruled against Plaintiff on her NLRA

33

retaliation claim, Plaintiff contends that a jury may have come
to a similar conclusion. Id. at 12. Plaintiff reasons that "if a
jury resolved Plaintiff's retaliation and discrimination claims
against her, the danger of its also deciding against her on the
FLSA claims was real." Id. Therefore, in light of the
significant weaknesses in other facets of Plaintiff's case, a
settlement of her FLSA claims is reasonable.

Although there is no confidentiality clause--a common
basis for a court's rejection of a proposed agreement, see,
e.g., Mabry, 2015 WL 5025810, at *2-3--the proposed release
provisions run contrary to the FLSA. As explained below, the
release provisions are overly broad and the parameters of the
FLSA claim waiver are unclear. Therefore, the Court will not
approve this portion as the proposed Agreement.

To that effect, just last year, a court in the Middle
District of Pennsylvania found that the release provisions in a
private settlement agreement were overly broad and declined to
approve the provisions. Bettger, 2015 WL 279754, at *8. In that
case, the release provisions, as drafted, precluded the
plaintiff "from raising any and all claims" she might have
against the defendant "arising prior to the execution date of
the agreement and requir[ing] her to dismiss any charges of
discrimination, harassment, or retaliation currently pending
with any government agency." Id. at *9. The court did not have

34

any "information regarding the value of the released claims to the parties, and the parties fail[ed] to provide any explanation for the agreement's far-reaching waiver." Id. Under the proposed release provisions, if the plaintiff were to have discovered "any potential cause of action arising from events that predate the agreement's execution, she [would] be barred from litigating against [the defendant]." Id. The court therefore concluded "that such a broad waiver impermissibly frustrates the implementation of an otherwise fair and reasonable settlement." Id.

Here, like in Bettger, the "General Release and Waiver of All Claims" provision in the Agreement is extremely broad. The release provisions preclude Plaintiff from raising "any and all" claims she might have against Defendants arising from a laundry list of charges, including but not limited to, back pay, discrimination, retaliation, harassment, "any and all tort Claims or contract Claims," as well as violations of "any federal, state, or local fair employment practices or civil rights laws or ordinances." Pl.'s Mot. Ex. C, at 3-5. Like in Bettger, if Plaintiff were to discover any potential cause of action arising from events that predate its execution, she will be barred from litigating against Defendants under the Agreement. Id. at 5 ("Kraus understands that she is waiving,

releasing and giving up all Claims and rights that she knows about and all Claims and rights that she may not know about.").

"Given the legislative intent, purpose and context of the FLSA, it would be unfair for the Court to enforce this settlement's prospective waiver of Plaintiffs' FLSA rights." Brumley, 2012 WL 1019337, at *8. And, as previously discussed, the so-called "global" nature of the Agreement does not excuse the parties from properly delineating the waiver of Plaintiff's FLSA claims in a reasonable manner consistent with the FLSA.[13] Accordingly, when "[a]pplying the exacting scrutiny mandated by the FLSA" to the proposed release provision here, "the court is compelled to find that such a broad waiver impermissibly frustrates the implementation of an otherwise fair and reasonable settlement." Bettger, 2015 WL 279754, at *9. The Court will not approve the release provisions as drafted in the proposed settlement agreement.

### 3.   Attorneys' Fees

The Court next addresses the $7,065.73 in attorneys' fees and costs provided for by the proposed Agreement. Under the

---

[13]     To be clear, the Court does not suggest that Plaintiff would be unable to settle her non-FLSA claims simply because she purports to waive her FLSA claim in the same agreement. Rather, the release provisions here are neither clear nor specific as to how Plaintiff's FLSA claims are to be waived or how her FLSA rights are to be affected.

FLSA, the Court "shall, in addition to any judgment awarded to
the plaintiff . . . allow a reasonable attorney's fee to be paid
by the defendant, and costs of the action." 29 U.S.C. § 216(b).
Percentage of recovery is the prevailing method used by courts
in the Third Circuit for wage and hour cases. Keller v. TD Bank,
No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014).
The percentage-of-recovery method awards a fixed portion of the
settlement fund to counsel. McGee, 2014 WL 2514582, at *4.

When evaluating the appropriateness of an attorneys'
fee award under the percentage-of-recovery method, the Court
must consider the following factors:

> (1) the size of the fund created and the
> number of persons benefitted; (2) the
> presence or absence of substantial
> objections by members of the class to the
> settlement terms and/or fees requested by
> counsel; (3) the skill and efficiency of the
> attorneys involved; (4) the complexity and
> duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted
> to the case by plaintiffs' counsel; and (7)
> the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir.
2000). Of course, "[e]ach case is different, and in certain
cases, one factor may outweigh the rest." Id.

Here, only one person benefits from the settlement
fund, since it is a private, not collective, action. Plaintiff's
counsel has provided nothing in the record on which the Court
can rely to assess the skill and efficiency of the attorneys'

37

involved, except to say that the parties settled the case. As to
nonpayment, Plaintiff suggests that she would have faced
obstacles in establishing liability at trial, indicating a risk
that counsel could have walked away without compensation. These
factors weigh in favor of approving the proposed attorneys' fee
award.

But the complexity and duration of the litigation, as
well as the time devoted to the case by counsel, present a
different story. The time between the date when the case was
filed and when the parties reached the settlement agreement
spans less than three months. Counsel has not taken any
depositions or conducted discovery. Cf. Lyons, 2015 WL 4378514,
at *5 (approving attorneys' fees amounting to 44% of the total
settlement amount, despite it being "on the higher side," where
counsel reviewed approximately 12,000 pages of documents and
conducted a deposition). There were no interrogatories, document
requests, or requests for admission. Cf. Mabry, 2015 WL 5025810,
at *4 (approving 40% for a private settlement where "counsel
worked for seventy-five hours on this case and counsel
propounded three (3) sets of Interrogatories; two (2) sets of
Document Requests; one (1) set of Requests for Admission; and
drafted a deficiency letter" (internal quotation marks
omitted)). On this record, it appears that Plaintiff's counsel

did no more than draft and file the Complaint and negotiate a settlement.

Moreover, it is true that courts have approved attorneys' fees in FLSA settlement agreements "from roughly 20-45%" of the settlement fund. Mabry, 2015 WL 5025810, at *4 (collecting cases and the percentages that those courts found to be reasonable). But that range of recovery has arisen in collective and class action settlements, not private actions.

Here, the private settlement proposes $7,065.73 in attorneys' fees and costs, which represents approximately thirty-nine percent of the total settlement amount of $18,000. Counsel has not provided a basis for the proposed percentage, nor has counsel provided a lodestar calculation against which the Court could compare the percentage of recovery to determine whether "the total amount recovered is significantly less than the lodestar method would permit." Id.; In re Rite Aid Corp. Secs. Litig., 396 F.3d 294, 305-306 (3d Cir. 2005) (describing this process as "cross-checking").

The Court is required to "articulate" the basis for a fee award. Gunter, 223 F.3d at 196, 198-99; see Brown v. TrueBlue, Inc., 2013 WL 5408575, at *3 (M.D. Pa. Sept. 25, 2013) (declining to approve the requested attorneys' fees without any basis on which the court could evaluate the proposed award). Here, on this record, the Court cannot do so. Therefore, the

39

Court will deny the attorneys' fees without prejudice so that counsel may file a memorandum indicating the basis for the calculated fees.[14]

**V.    CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's uncontested motion for judicial approval of the settlement agreement. The Court will not approve the overbroad release provisions, because they are neither fair nor reasonable in light of the FLSA's purpose. The Court will also decline to approve the requested attorneys' fees without prejudice, permitting counsel to file a supplemental memorandum addressing the calculation and basis for the requested fees. An appropriate order follows.

---

[14]    In the event that the requested attorneys' fees are reduced, it is yet to be determined whether the remaining amount is to be paid to Plaintiff or returned to Defendants.