IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE KRAUS, | : | CIVIL ACTION |
| | : | NO. 15-4180 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PA FIT II, LLC, et al., | : | **FILED** |
| | : | |
| Defendants. | : | **MAR 09 2016** |

**MICHAEL E. KUNZ, Clerk**
By_____Dep Clerk

**O R D E R**

**AND NOW**, this **9th** day of **March, 2016**, upon

consideration of the parties' proposed Amended Settlement

Agreement faxed to the Court on January 21, 2016,[1] and the

Supplemental Memorandum in Support of Attorneys' Fees and Costs

(ECF No. 23), both of which the Court will construe as a joint

motion for approval, it is hereby **ORDERED** that the Motion is

**GRANTED** as follows:

> (1)   the Amended Settlement Agreement is a fair and
>
> reasonable resolution of a bona fide dispute over
>
> FLSA provisions,[2] and Defendants are authorized to
>
> distribute $11,345.96 to Plaintiff[3];

---

[1]      The parties' proposed Amended Settlement Agreement is
attached hereto as Exhibit A. See Cuttic v. Crozer-Chester Med.
Ctr., 868 F. Supp. 2d 464, 467 (E.D. Pa. 2012) (explaining that
"there is a strong presumption in favor of keeping settlement
agreements in FLSA wage-settlement cases unsealed and available
for public view").

[2]      There are only two ways that FLSA claims may be
compromised or settled: (1) a compromise supervised by the

Department of Labor pursuant to 29 U.S.C. § 216(c), or (2) a
compromise approved by the district court pursuant to 29 U.S.C.
§ 216(b). Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp. 3d 474,
476 (E.D. Pa. 2014) (explaining that Department of Labor
supervision or court approval are the "only two ways that FLSA
claims can be settled or compromised by employees," "[b]ecause
of the public interest in FLSA rights").

        The second avenue--approval by the district court--is
requested in this case. "When parties present to the district
court a proposed settlement, the district court may enter a
stipulated judgment if it determines that the compromise reached
'is a fair and reasonable resolution of a bona fide dispute over
FLSA provisions' rather than 'a mere waiver of statutory rights
brought about by an employer's overreaching.'" Cuttic v. Crozer-
Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012)
(quoting Lynn's Food Stores Inc. v. United States, 679 F.2d
1350, 1354 (11th Cir. 1982)); see also Lyon's v. Gerhard's Inc.,
No. 14-06693, 2015 WL 4378514, *3 (E.D. Pa. July 16, 2015)
(applying the Lynn's Food standard).

        A proposed settlement resolves a bona fide dispute
where its terms "reflect a reasonable compromise over issues,
such as . . . back wages, that are actually in dispute." Lynn's
Food, 679 F.2d at 1355. After determining whether the settlement
concerns a bona fide dispute, courts will conduct a two-part
fairness inquiry to ensure that (1) the settlement is fair and
reasonable for the employee(s), and (2) the agreement furthers
the FLSA's implementation in the workplace. See Mabry v.
Hildebrant, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug.
24, 2015); McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL
2514582, at *2 (E.D. Pa. June 4, 2014).

        For the reasons discussed in the Court's previous
memorandum and order that granted in part and denied in part
Plaintiff's motion for approval, the same framework applies to
assess the propriety of a private FLSA settlement. See Kraus v.
PA Fit II, LLC, No. 15-4180, 2016 WL 125270, at *5 (E.D. Pa.
Jan. 11, 2016); see also Mabry v. Hildebrant, No. 14-5525, 2015
WL 5025810, at *1-2 (E.D. Pa. Aug. 24, 2015) (collecting cases);
Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at *3-4
(M.D. Pa. Jan. 22, 2015) (collecting cases).

        The Court has previously determined that the
Settlement Agreement resolves a bona fide dispute. See Kraus,
2016 WL 125270, at *11. Therefore, the Court is left to

determine whether the proposed Amended Settlement Agreement is fair and reasonable. Mabry, 2015 WL 5025810, at *3.

Here, the proposed Amended Settlement Agreement provides due compensation for the alleged unpaid wages owed to Plaintiff. The compensation terms are fair and reasonable because the settlement amount is significant in light of Plaintiff's claim. According to Plaintiff's calculations, "her FLSA claim for unpaid wages amounts to approximately $1,944 to $3,888" considering the estimated time that she worked without compensation. ECF No. 18, at 11. Given that the gross settlement amount is $18,000, Plaintiff states that "even a random allocation of one-half of the total gross settlement (i.e., $9,000) to Plaintiff's FLSA claim would result in more than double the most conservative estimate of Plaintiff's unpaid wage damages." Id. at 11-12. Therefore, the compensation afforded by the proposed Agreement is fair.

Moreover, settlement of Plaintiff's claims is reasonable where pursuing the claims further would likely be expensive and difficult. Plaintiff's case as a whole indicates significant hurdles in establishing Defendants' liability. For example, where the ALJ ruled against Plaintiff on her NLRA retaliation claim, Plaintiff contends that a jury may have come to a similar conclusion. Id. at 12. Plaintiff reasons that "if a jury resolved Plaintiff's retaliation and discrimination claims against her, the danger of its also deciding against her on the FLSA claims was real." Id. Therefore, in light of the significant weaknesses in other facets of Plaintiff's case, a settlement of her FLSA claims is reasonable.

As to the specific terms of the proposed Amended Settlement Agreement, there is no confidentiality clause, thereby avoiding a common basis for rejecting a proposed settlement. See, e.g., Mabry, 2015 WL 5025810, at *2-3. And the Court's previous concerns regarding the breadth of the release provisions have been resolved. See Kraus, 2016 WL 125270, at *12-13.

The originally proposed Settlement Agreement contained release provisions that would have precluded Plaintiff from raising "any and all" claims she might have against Defendants arising from a laundry list of charges, including but not limited to, back pay, discrimination, retaliation, harassment, "any and all tort Claims or contract Claims," as well as violations of "any federal, state, or local fair employment

3

practices or civil rights laws or ordinances." ECF No. 18, Ex.
C, at 3-5. If Plaintiff were to have discovered any potential
cause of action arising from events that predate its execution,
she would be barred from litigating against Defendants under the
Agreement. Id. at 5 ("Kraus understands that she is waiving,
releasing and giving up all Claims and rights that she knows
about and all Claims and rights that she may not know about.").

          The originally proposed Settlement Agreement also
contained an entire paragraph titled "No Other Claims," which
required Kraus to agree that she would not initiate "any other
lawsuit, legal proceeding, action, or claim of any nature with
any agency or court . . . against Defendants." Id. ¶ 7. This
would have waived any claim "based on any matter, fact or event
occurring prior to the effective date of [the] Agreement,
whether now known or unknown by Kraus, or involving any
continuing effects of any acts or practices which may have
arisen or occurred prior to the effective date of [the]
Agreement." Id. When "[a]pplying the exacting scrutiny mandated
by the FLSA" to the proposed release provision, the Court was
"compelled to find that such a broad waiver impermissibly
frustrates the implementation of an otherwise fair and
reasonable settlement." Kraus, 2016 WL 125270, at *13.

          The Amended Settlement Agreement's release provisions
are now more exacting and no longer frustrate the FLSA's
purpose. The Amended Agreement specifies that Plaintiff is
required to release and discharge all Defendants of and from

               all claims, demands, actions, causes of
               action,    other    liabilities,   and/or
               damages . . . against Defendants that in any
               way arise out of or are connected with acts,
               omissions,    conduct,     relationships,
               occurrences,    dealings,   communications,
               events,   and/or   transactions   that  have
               occurred on or before the effective date of
               this formal settlement agreement, including,
               without limitation, all claims asserted by
               Kraus in the Civil Action.

Am. Settlement Agreement ¶ 4.

          The proposed Agreement explains that it

4

(2)   The Court awards $6,654.04 in total attorneys'

fees and costs, comprised of $1,065.73 for costs

incurred and $5,588.31 as attorneys' fees[4];

---

> shall not be interpreted or construed as a
> waiver or release by Kraus of any claims,
> demands, actions, causes of action, other
> liabilities    and/or     damages      against
> Defendants under the Fair Labor Standards
> Act, as amended, 29 U.S.C. § 201, et seq.,
> including any claims arising out of or based
> upon any allegations seeking to recover
> wages, salary, commissions, bonuses, front
> or back pay, benefits, stock options, profit
> sharing    interests,   or   any   other   such
> employee-related compensation or benefits
> that may currently be unknown to Kraus, but
> about which she may learn or discover in the
> future.

Id.

It further states that Defendants shall be discharged "to the maximum extent permitted by law, but excluding any release or waiver of [Plaintiff's] prospective rights under the Fair Labor Standards Act." Id. And it no longer contains the overly expansive "No Other Claims" paragraph.

The amended release provisions are more clear and specific as to how Plaintiff's FLSA claims are to be waived and how her rights are to be affected going forward. The waiver no longer "impermissibly frustrates the implementation of an otherwise fair and reasonable settlement." Bettger, 2015 WL 279754, at *9. Therefore, the Court approves the terms of the Amended Settlement Agreement.

---

[3]     Because the Court orders a reduction in the amount of requested attorneys' fees, see infra n.4, Plaintiff's net amount of the gross settlement fund will increase by the reduced amount. See ECF No. 23-1, at 14 n.8.

[4]     Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases. Keller v. TD Bank, No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov.

4, 2014). The percentage-of-recovery method awards a fixed portion of the settlement fund to counsel. McGee, 2014 WL 2514582, at *4.

Plaintiff's counsel seeks a total of $7,065.73 in attorneys' fees and costs, representing $1,065.73 in litigation costs and $6,000.00 in attorneys' fees. ECF No. 23, at 4. The total amount requested represents approximately 39% of the total settlement amount. This percentage represents the higher end of the recovery allowed by courts in this Circuit regarding collective and class action settlements, and this case is neither. See Mabry, 2015 WL 5025810, at *4 (collecting cases and the percentages that those courts found to be reasonable to conclude that courts have approved attorneys' fees in FLSA settlement agreements "from roughly 20-45%").

The Court recognizes that counsel has performed well and achieved a favorable outcome for Plaintiff. However, upon consideration and application of the factors set forth in Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000), it appears that 1/3 or 33 1/3% of the net settlement fund as attorneys' fees is more consistent with the nature and amount of time spent. See, e.g., Creed v. Benco Dental Supply Co., No. 12-01571, 2013 WL 5276109, *6 (M.D. Pa. 2013) (determining that "an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit").

When evaluating the appropriateness of an attorneys' fee award under the percentage-of-recovery method, the Court must consider the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter, 223 F.3d at 195 n.1.

6

Here, only one person benefits from the settlement
fund, since it is a private, not collective, action. While there
are no class members to object to the requested fees, Plaintiff
has indicated that she has no objection to the total amount of
requested attorneys' fees and litigation costs. ECF No. 23, Ex.
B ¶ 11. Plaintiff's counsel has sufficient experience in this
area of law and worked efficiency to settle the case. ECF No.
23, at 6. Moreover, there was a substantial risk of nonpayment
where Plaintiff received unfavorable rulings by the ALJ in the
NLRB claim, which suggests that she risked a similarly adverse
ruling in the federal litigation. Id. at 10.

But the complexity and duration of the litigation, as
well as the time devoted to the case by counsel does not compel
the requested amount. The time between the date when the case
was filed and when the parties reached the settlement agreement
spans less than three months. Counsel has spent approximately
83.4 hours representing Plaintiff in the present matter. Id.
Counsel has not taken any depositions or conducted discovery.
Cf. Lyons, 2015 WL 4378514, at *5 (approving attorneys' fees
amounting to 44% of the total settlement amount, despite it
being "on the higher side," where counsel reviewed approximately
12,000 pages of documents and conducted a deposition). There
were no interrogatories, document requests, or requests for
admission. Cf. Mabry, 2015 WL 5025810, at *4 (approving 40% for
a private settlement where "counsel worked for seventy-five
hours on this case and counsel propounded three (3) sets of
Interrogatories; two (2) sets of Document Requests; one (1) set
of Requests for Admission; and drafted a deficiency letter"
(internal quotation marks omitted)).

Although the requested amount of attorneys' fees and
costs is less than the lodestar cross-check analysis would have
permitted, the lodestar cross-check is not dispositive. See In
re Rite Aid Corp. Secs. Litig., 396 F.3d 294, 306-07 (3d Cir.
2005). Moreover, the awarded amount is not dramatically reduced
from the requested amount. Cf. Gunter, 223 F.3d at 197
(discussing the district court's unsubstantiated decision to
reduce the requested amount from 33 1/3% to 18% of the total
settlement fund). Instead, the reduction reflects the nature and
amount of work actually performed in this specific case.

Upon application of the Gunter factors, the Court
concludes that a fee award of $5,588.31, which is equal to one-
third of the net settlement fund after deducting $1,065.73 in
litigation costs, is reasonable and fair. See, e.g., Grier v.

(3)   The above-captioned action is **DISMISSED with**

**prejudice**, and the Clerk of the Court shall mark

the case as **CLOSED**.

**AND IT IS SO ORDERED.**

_____

EDUARDO C. ROBRENO, J.

**ENTERED**

**MAR 0 9 2016**

**CLERK OF COURT**

---

<u>Chase Manhattan Auto. Fin. Co.</u>, No. 99-180, 2000 WL 175126, at
*8 (E.D. Pa. Feb. 16, 2000). Attorneys' fees in the amount of
$5,588.31 combined with litigation costs in the amount of
$1,065.73 equals $6,654.04 as the total amount of costs and fees
to be awarded to counsel. This leaves $11,345.96 of the gross
settlement fund to be awarded to Plaintiff. <u>See</u> ECF No. 23, at
14 n.8.

Exhibit A

# STEVENS & LEE
## LAWYERS & CONSULTANTS

620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
(610) 205-6000 Fax (610) 337-4374
www.stevenslee.com

| | |
|---|---|
| Direct Dial: | (610) 205-6039 |
| Email: | ljr@stevenslee.com |
| Direct Fax: | (610) 371-7977 |

January 21, 2016

**VIA FACSIMILE ONLY (267) 299-5113**

Honorable Eduardo C. Robreno
United States District Court for the Eastern District of Pennsylvania
Room 15614
601 Market Street
Philadelphia, PA 19106-1797

*Re: Kraus v. PA Fit II, LLC*
*Civil Action No. 2:15-CV-04180*

Dear Judge Robreno:

We have received and reviewed your Memorandum and Opinion dated January 11, 2016 regarding the above-referenced matter. The parties acknowledge the concerns raised in your Memorandum and Opinion with regard to the scope of the release provisions and have amended the Agreement accordingly. While the parties were not certain whether the Court required resubmission of the Amended Agreement for approval, out of abundance of caution the parties agreed to resubmit the Amended Agreement to the Court. Accordingly, I request of behalf of the parties that you execute an Order approving the Amended Agreement as it has been revised to comport with your Memorandum and Order.

Philadelphia  •  Reading  •  Valley Forge  •  Allentown  •  Harrisburg  •  Lancaster  •  Scranton
Wilkes-Barre  •  Princeton  •  Charleston  •  New York  •  Wilmington
A PROFESSIONAL CORPORATION

SL1 1400075v1 000000.00000

# STEVENS & LEE
## LAWYERS & CONSULTANTS

Honorable Eduardo C. Robreno
January 21, 2016
Page 2


Thank you for your kind attention to this matter.

Respectfully Submitted,

STEVENS & LEE

LARRY J. RAPPOPORT

LJR:lic

cc:     Michael Davy, Esquire
        Justin Klein, Esquire
        Nicole Miller, Esquire
        Honorable Thomas J. Reuter

## AMENDED SETTLEMENT AGREEMENT AND GENERAL RELEASE

THIS AMENDED SETTLEMENT AGREEMENT AND GENERAL RELEASE (hereinafter referred to as the "Amended Agreement") is made and entered into by and between MICHELLE KRAUS (hereinafter referred to as "Plaintiff" or "Kraus") and PA FIT II, LLC D/B/A AS RETRO FITNESS ("PA Fit"), RETROFITNESS CLUBS, LLC, RETROFITNESS USA, LLC, MEGAN SWEITZER, WILLIAM MAHER and DENISE MAHER (collectively referred to herein as "Defendants"). Kraus and Defendants are referred to as the "Parties."

### BACKGROUND

A.   Kraus filed a Complaint Court of Common Pleas of Delaware County, Pennsylvania entitled *Kraus v. PA Fit II, LLC, et al.*, bearing Caption No. 15-5573. Defendants PA Fit, Megan Sweitzer, William Maher and Denise Maher subsequently filed a notice of removal to the United States District Court for the Eastern District of Pennsylvania, whereby the case is now entitled *Kraus v. PA Fit II, LLC, et al.*, bearing Caption No. 15-0410 (the "Civil Action"). The Civil Action asserted claims arising out of and relating to Kraus' employment with and separation from employment by Defendant PA Fit; and.

B.   On August 31, 2015, the Parties participated in a Settlement Conference before the Honorable Thomas J. Rueter, Magistrate Judge of the United States District Court for the Eastern District of Pennsylvania, and as a result thereof, the Parties now seek to amicably resolve any and all matters in controversy, disputes, causes of action, claims, contentions and differences between them, including, but not limited to, the Civil Action; and

C.   Defendants believe they acted lawfully and properly at all times and in all respects and specifically deny any and all liability for the claims alleged by Kraus, but desire to avoid further legal fees and expenses that necessarily will result from prolonged litigation; and

1

D. Defendants and Kraus, who has received independent legal advice in this matter, now wish to settle this matter in a manner that will eliminate the need for further litigation of any of the above-mentioned claims and actions and will provide Kraus with an amount of money that will recompense Kraus for any and all of her claims and costs; and

NOW, THEREFORE, in consideration of the foregoing, and the mutual promises contained herein, and other good and valuable consideration, and intending to be legally bound, the Parties have reached a full and final compromise and settlement of any and all matters in controversy, disputes, causes of action, claims, contentions and differences between them to settle all disputes between them, hereby agree and understand as follows:

1. **BACKGROUND CLAUSE**: The above Background clauses are incorporated into and form a part of this Amended Agreement.

2. **NON-ADMISSION**: This Amended Agreement is not, and shall not in any way be considered or construed as, an admission by Defendants, including but not limited to Defendants Retrofitness Clubs, LLC and Retrofitness USA, LLC, of discrimination, harassment, negligence, retaliation, wrongful discharge, tortious conduct, or of any violation of any law, common law, or federal, state or local statute or regulation, or of any employment policy, practice, contract or agreement, or of any alleged duty owed by Defendants to Kraus, or of any unlawful or wrongful acts whatsoever by Defendants. The payment hereunder is made solely to avoid the inconvenience and cost of further litigation and to resolve completely all of Kraus' claims against Defendants and the other Released Parties, as more fully detailed in Paragraph 4, below.

2

3. **COOPERATION**: The Parties agree to cooperate fully with each other in connection with any steps required to be taken as part of their obligations under this Amended Agreement.

4. **GENERAL RELEASE AND WAIVER OF ALL CLAIMS**: Kraus releases and forever discharges all Defendants; their respective successors; assigns; representatives; parents; subsidiaries; insurers; administrators; divisions; affiliates and all related companies; all of Defendant PA Fit's present and former officers, agents, directors, supervisors, attorneys, insurers, reinsurers, employees, stockholders, parent, franchisor(s), subsidiaries, affiliated businesses and each and every one of them and their heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with any of them; and all of Defendants Retrofitness USA, LLC's and Retrofitness Clubs, LLC's present and former officers, agents, directors, supervisors, attorneys, insurers, reinsurers, employees, stockholders, parent, franchisor(s), subsidiaries, affiliated businesses and each and every one of them and their heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with any of them  (all of which are hereinafter referred to collectively as "Released Parties") jointly and severally, for any and all claims, demands, actions, causes of action, other liabilities, and/or damages, if any, known or unknown, whether arising at law, by statute, or in equity, which Kraus, or any other person or entity claiming by, through or under her, may have or claim to have, jointly or severally, against Defendants that in any way arise out of or are connected with acts, omissions, conduct, relationships, occurrences, dealings, communications, events, and/or transactions that have occurred on or before the effective date of this formal settlement agreement, including, without limitation, all claims asserted by Kraus in the Civil Action. This Amended Agreement, however, shall not be interpreted or construed as a waiver or

3

release by Kraus of any claims, demands, actions, causes of action, other liabilities and/or damages against Defendants under the Fair Labor Standards Act, *as amended,* 29 U.S.C. § 201, *et. seq.,* including any claims arising out of or based upon any allegations seeking to recover wages, salary, commissions, bonuses, front or back pay, benefits, stock options, profit sharing interests, or any other such employee-related compensation or benefits that may currently be unknown to Kraus, but about which she may learn or discover in the future.

Kraus intends that this Release shall discharge Defendants and all of Defendant PA Fit, RetroFitness Clubs LLC and RetroFitness USA LLC's insurers, re-insurers and all other Released Parties, to the maximum extent permitted by law, but excluding any release or waiver of her prospective rights under the Fair Labor Standards Act. Kraus understands that the releases and waivers set forth in this Amended Agreement shall survive the signing and effective date of this Amended Agreement.

5. **WITHDRAWAL AND DISMISSAL WITH PREJUDICE OF THE CIVIL ACTION AND AGREEMENT NOT TO SUE:** The Parties acknowledge that the Civil Action was dismissed with prejudice by an Order of the Court on September 1, 2015. Kraus agrees that she will not refile, revive, or reopen this Civil Action or any related lawsuit, except as refiling reviving or reopening may relate to:   (a) judicial approval of this Amended Agreement; (b) enforcement of the terms and conditions of this Amended Agreement; or (e) the entries of formal judgments against Defendants pursuant to sub-paragraph 8(c) of this Amended Agreement.

6. **WITHDRAWAL AND DISMISSAL WITH PREJUDICE OF THE NATIONAL LABOR RELATIONS BOARD CASE NO. 04-CA-139626:** Kraus agrees that within seven (7) days after the effective date of this Amended Agreement she will formally

4

request in writing that the Regional Counsel for the National Labor Relations Board ("NLRB") dismiss in its entirety with prejudice, Case No. 04-139626 now pending before the NLRB ("Charge") with each party to bear solely their or its own expenses, costs and attorneys' fees, except as described herein. Kraus agrees that she will not refile, revive, or reopen this Charge. Kraus further agrees that if the NLRB rejects this settlement and declines to dismiss the Charge with prejudice, Kraus will disclaim all rights to the benefits and payments described herein.

Kraus understands and agrees that she will not be considered a prevailing party, and will not be permitted to receive any attorneys' fees, costs, or expenses under any statute, common law, or otherwise as a result of this Amended Agreement.

7. **PAYMENT**: In exchange for the promises, agreements and legal releases stated herein, and other good and valuable consideration, Defendants PA Fit, Ms. Sweitzer, and Mr. &Mrs. Maher ("Paying Defendants") agree to pay to Kraus a total of EIGHTEEN THOUSAND DOLLARS ($18,000.00). Kraus understands and agrees that this settlement payment of EIGHTEEN THOUSAND DOLLARS ($18,000.00) will be paid in in the following manner:

(a) Paying Defendants agree to pay Kraus TEN THOUSAND NINE HUNDRED THIRTY FOUR DOLLARS AND TWENTY SEVEN CENTS ($10,934.27) on a W-2 basis representing alleged lost wages. This amount shall be paid to Kraus over a six (6) month period commencing fifteen (15) days after the Effective Date of this Amended Agreement. The payment schedule is as follows:

(i) Within fifteen (15) days after the Effective Date of this Amended Agreement, Kraus shall receive a check in the amount of TWO THOUSAND ONE HUNDRED

5

EIGHTY SIX DOLLARS AND EIGHTY SEVEN CENTS ($2,186.87) made payable to Kraus, less applicable taxes and/or statutory deductions;

(ii) Within forty-five (45) days after the Effective Date of this Amended Agreement, Kraus shall receive a check in the amount of TWO THOUSAND ONE HUNDRED EIGHTY SIX DOLLARS AND EIGHTY FIVE CENTS ($2,186.85) made payable to Kraus, less applicable taxes and/or statutory deductions;

(iii) Within seventy-five (75) days after the Effective Date of this Amended Agreement, Kraus shall receive a check in the amount of TWO THOUSAND ONE HUNDRED EIGHTY SIX DOLLARS AND EIGHTY FIVE CENTS ($2,186.85) made payable to Kraus, less applicable taxes and/or statutory deductions;

(iv) Within one hundred and five (105) days after the Effective Date of this Amended Agreement, Kraus shall receive a check in the amount of TWO THOUSAND ONE HUNDRED EIGHTY SIX DOLLARS AND EIGHTY FIVE CENTS ($2,186.85) made payable to Kraus, less applicable taxes and/or statutory deductions; and

(v) Within one hundred and thirty-five (135) days after the Effective Date of this Amended Agreement, Kraus shall receive a check in the amount of TWO THOUSAND ONE HUNDRED EIGHTY SIX DOLLARS AND EIGHTY FIVE CENTS ($2,186.85) made payable to Kraus, less applicable taxes and/or statutory deductions.

(b) Paying Defendants further agree to pay the law firm of Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews & Auslander, P.C. (Federal Tax I.D. No. ) ("the law firm") a total of SEVEN THOUSAND AND SIXTY FIVE DOLLARS AND SEVENTY THREE CENTS ($7,065.73) which represents payment for attorneys' fees and costs incurred. This amount will be reported on IRS Form 1099 as Box 14

6

provided by Defendants under any contract, severance plan, policy or practice; that no other promise or agreements of any kind have been made to her or with her by any person or entity whatsoever to cause her to sign this Amended Agreement; that but for this Amended Agreement Kraus is not already entitled to receive the payments and consideration described above in Paragraph 7; that she is competent to execute this Amended Agreement; that she has been advised and given the opportunity to consult advisors, legal and otherwise, of her own choosing; that she has had adequate opportunity to review and discuss, and has reviewed and discussed, all of the terms of this Amended Agreement thoroughly with her attorney; that her attorney has explained this entire Amended Agreement to her; that she has, and was given, a fair opportunity to review and consider the terms and conditions of the Amended Agreement before signing it; that her release of all claims shall not become effective until the effective date of the Amended Agreement; and, that she fully understands the meaning and intent of this Amended Agreement.

9. **REHIRE:** Kraus further understands and agrees that Defendant PA Fit and/or any affiliated company or successor shall be under no obligation to reinstate, rehire nor consider her for future employment. Kraus expressly agrees that she will not apply for any such employment reinstatement or rehire now or at any time in the future with Defendant PA Fit or any other Released Party.

10. **NON-DISPARAGEMENT:** Kraus agrees that she will not make any negative statements or do anything which disparages or derogates the individual Defendants and Defendant PA Fit, RetroFitness Clubs and RetroFitness USA their services, reputation, officers, employees, attorneys or operations. The individual Defendants and Defendants PA Fit, RetroFitness Clubs and RetroFitness USA agree not to make any negative statements or do anything which disparages or derogates Kraus. If a reference is requested by a prospective

8

employer with respect to Kraus, a representative of PA Fit will provide only the following information:  (1) her job title; (2) her salary; and (3) her dates of employment.

11. **BREACH**:  In the event that the Defendants become aware of circumstances which lead to the conclusion that a breach of Paragraph 10 of this Agreement has occurred, Defendants will be entitled to the immediate repayment of all payments provided to Kraus under this Amended Agreement and may discontinue any unpaid payments and benefits.  Should Kraus fail to make such repayment, Kraus agrees that she will be deemed conclusively to be bound by the terms of this Amended Agreement and to waive any right to seek to overturn or avoid it. Kraus further agrees that her repayment will not invalidate this Amended Agreement.  Kraus warrants and represents that from the time of her receipt of this Amended Agreement (or any prior drafts) through the date she signed this Amended Agreement, she has not breached Paragraph No. 10.  The remedies provided for in this provision shall not be construed to be exclusive and do not bar any other claims for relief, either at law or equity.

12. **ATTORNEY'S FEES/COSTS**:    Kraus acknowledges that she is not a prevailing party in this matter and that she is not entitled to any costs or attorney's fees due to the settlement of this matter, except to the extent provided within Paragraph 7 herein, wherein a portion of the settlement has been allocated to counsel fees and costs.  Counsel agrees that she will not petition for such fees by application to the Court.

13. **CHOICE OF LAW AND FORUM**:  This Amended Agreement shall in all respects be interpreted, enforced, governed under the substantive and procedural laws of the Commonwealth of Pennsylvania, except where federal law applies.  The language of all parts of this Amended Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.  The Parties consent and stipulate to the personal

9

jurisdiction of the federal and/or state courts located in Pennsylvania in any subsequent proceeding to enforce this Amended Agreement.

14. **FULL KNOWLEDGE:** Kraus further warrants, represents, and agrees that in signing this Amended Agreement, she does so with full knowledge of any and all rights which she may have with respect to Defendants, other Released Parties, or the Civil Action.

15. **INVALIDITY:** Should any provisions of this Amended Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be part of this Amended Agreement.

16. **ENTIRE AGREEMENT:** This Amended Agreement sets forth the entire agreement between the Parties hereto and fully supersedes any and all prior agreements or understandings, written or oral, between the Parties hereto pertaining to the subject matter hereof. Kraus represents and acknowledges that in executing this Amended Agreement she does not rely and has not relied upon any representation or statement made by Defendant PA Fit or any of the Individual Defendants or by any of Defendant PA Fit's agents, representatives or attorneys, with regard to the subject matter or effect of this Amended Agreement or otherwise, other than as specifically stated in this written Amended Agreement. Kraus further declares that in making this Amended Agreement she relies entirely upon her own judgment, belief and interests and the advice of her counsel. This Amended Agreement may be signed in counterparts and, if signed, shall have the same force and effect as if signed at the same time.

17. **COMPLETE BAR:** Kraus agrees that Defendants and the other Released Parties, as designated in Paragraph 5, above, may plead this Amended Agreement as a complete

10

bar to any action or suit before any court or administrative body with respect to any claims released herein.

18. **WHO IS BOUND**: All Parties to this Amended Agreement are hereby bound by its terms. All who succeed to the rights and responsibilities of all Parties, including heirs, executors, assigns and successors in interests, shall also be bound by this Amended Agreement.

19. **EFFECTIVE DATE**: Consistent with the Court's January 11, 2016 Memorandum and Order, it is agreed that once signed by all Parties, this Amended Agreement shall be jointly presented to the Court by all Parties for judicial approval under the federal Fair Labor Standards Act, and the Parties agree to jointly request that judicial approval of this Amended Agreement be granted. This Amended Agreement shall become effective upon the date an Order is entered by the Court granting approval of this Amended Agreement. In the event that the Court again denies or refuses to approve the terms and conditions of this Amended Agreement as presented, the Parties agree to work together in good faith to attempt to amicably resolve any issues identified or raised by the Court in denying approval of this Amended Agreement, to further amend the Amended Agreement in such a fashion as to resolve said issues, and jointly submit to and seek approval of, a Second Amended Agreement by the Court.

DATED: _____, 2016      _____
                                      MICHELLE KRAUS

DATED: _____, 2016      _____
                                      WITNESS

DATED: _____, 2016      _____
                                      PA FIT, LLC
                                      By:

11

DATED: _____, 2016

_____
WITNESS


DATED: _____, 2016

_____
RETROFITNESS USA, LLC
By:


DATED: _____, 2016

_____
WITNESS


DATED: _____, 2016

_____
RETROFITNESS CLUBS, LLC
By:


DATED: _____, 2016

_____
WITNESS


DATED: _____, 2016

_____
MEGAN SWEITZER


DATED: _____, 2016

_____
WITNESS


DATED: _____, 2016

_____
WILLIAM MAHER


DATED: _____, 2016

_____
WITNESS


DATED: _____, 2016

_____
DENISE MAHER


DATED: _____, 2016

_____
WITNESS


12